## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>    Defendant. | Civil Action No. 1:26-cv-00160 |

## COMPLAINT

Plaintiff Gilbert P. Hyatt, by and through his attorneys Baker & Hostetler LLP, alleges as follows:

### Nature of the Action

1. This is an action under the Patent Act, 35 U.S.C. § 145, to obtain a patent on patent application serial number 05/302,771 (Dkt. #112). For over five decades, Plaintiff Gilbert P. Hyatt has diligently prosecuted the '771 Application in the U.S. Patent and Trademark Office ("PTO"), as well as several hundred co-pending applications.

2. Congress has provided a cause of action for an aggrieved patent applicant to bring a civil action under 35 U.S.C. § 145 to obtain *de novo* consideration of his entitlement to a patent. Mr. Hyatt brings this action to obtain a patent in this application.

### Parties

3. Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has obtained more than 70 issued patents. Some of his patents and applications cover microcomputer structure, computer memory architecture, incremental processing, illumination devices, display devices, graphics systems, image processing, and sound and speech processing. He is 87 years of age and resides in Clark County, Nevada.

4. Defendant John A. Squires is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. He has overall responsibility for the administration and operation of the PTO, including the patent examination process. He is named as a defendant in his official capacity only.

## Jurisdiction and Venue

5. This action arises under the patent laws of the United States. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 145.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 35 U.S.C. § 145.

7. This Complaint is timely filed in accordance with 35 U.S.C. § 145 and 37 C.F.R. § 90.3(a)(3)(i).

8. This matter has not been appealed to the United States Court of Appeals for the Federal Circuit.

## The '771 Application

9. Mr. Hyatt is the owner and inventor of U.S. Patent Application Serial No. 05/302,771 (Dkt. #112) (the "'771 Application").

10. The '771 Application has the benefit of the filing date of U.S. Patent Application Serial No. 05/101,881 (Dkt. #101) filed on December 28, 1970.

11. The '771 Application includes the following 285 claims: 91, 94, 103–118, 120–126, 129, 132–142, 144–189, 191, 193–278, 280–289, 291, 293–321, 323–340, 342–363, 365–387, and 389–400 (the "Subject Claims").

12. Mr. Hyatt is seeking issuance of a patent on the Subject Claims, but not on any other claims in the '771 Application.

13. The Subject Claims in the '771 Application are generally directed to various specific processes of computerized control, as stated by specific limitations of each Subject Claim. Each of the Subject Claims of the instant application has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications. By declining to make an

undue multiplicity rejection, the PTO has effectively conceded that each of the Subject Claims inform with reasonable certainty the scope of each claim and have ascertainably different scope from claims those co-pending applications and from each other.

14. Mr. Hyatt filed the '771 Application on November 1, 1972. As such, this application is governed by the Transitional Rules under the Uruguay Round Agreements Act, Public Law No. 103-465 (1994) ("URAA"), including a provision the PTO implemented in 37 C.F.R. § 1.129(a) ("Rule 129(a)"), that limits to two the number of submissions that an applicant can file, to require limited further examination.

15. The '771 Application is deemed "special" under the PTO rules and must be "advanced out of turn." 37 C.F.R. § 1.102(a). It "continue[s] to be special throughout its entire course of prosecution in the [PTO], including appeal, if any, to the [Board]." MPEP § 708.01.

16. Mr. Hyatt has never made a dilatory filing in prosecuting the '771 Application. In contrast, the PTO suspended prosecution on at least five occasions (10/17/1983, 12/30/2008, 9/25/2009, 12/22/2010, and 8/11/2011), and entered new grounds of rejections at least as late as August 2019.

17. The PTO subjected all of Mr. Hyatt's applications, including the instant application, to the Sensitive Application Warning System ("SAWS"), from at least the late 1990s through 2015. In accordance with the terms of the SAWS, examiners lacked authority to allow Mr. Hyatt's patent applications. Moreover, under the terms of the SAWS, examiners and other PTO officials were directed to consider factors that are irrelevant to the statutory criteria for patentability in determining whether or not to permit Mr. Hyatt's applications to issue as patents. The inclusion of Mr. Hyatt's applications in the SAWS prejudiced the PTO in its consideration of Mr. Hyatt's applications, including the instant application.

18. In June 1973, Mr. Hyatt filed a preliminary amendment.

19. In August 1973, the PTO sent a restriction requirement.

3

20. In September 1973, Mr. Hyatt timely responded.

21. In January 1974, the PTO sent a non-final office action rejecting the non-restricted claims and made the restriction requirement final.

22. In February 1974, Mr. Hyatt filed a petition challenging the restriction requirement, which the PTO ignored.

23. In March 1974, the PTO sent a non-final office action rejecting the non-restricted claims.

24. In June 1974, Mr. Hyatt timely responded.

25. In September 1974, the PTO sent a final office action rejecting the non-restricted claims.

26. In December 1974, Mr. Hyatt filed an after-final amendment; in January 1975, Mr. Hyatt filed a notice of appeal; and in April 1975, Mr. Hyatt filed an appeal brief.

27. In January 1975 the PTO refused to enter the after-final amendment but indicated certain of the proposed amendments would be entered; accordingly, Mr, Hyatt filed a more limited after-final amendment, which the PTO entered.

28. In August 1975, the PTO sent an examiner's answer.

29. In November 1975, Mr. Hyatt filed a reply brief.

30. In March 1976, the Board held an oral hearing on the appeal.

31. In April 1976, Mr. Hyatt filed a claim-cancellation amendment, which the PTO entered.

32. In August 1976, the Board sent a decision reversing all rejections of claims 83, 90, and 94, sustaining certain rejections of other claims, and entering new grounds of rejection of claim 83.

33. In October 1976, Mr. Hyatt filed a request for reconsideration of the affirmed rejections and the new ground of rejection and an amendment.

34. In December 1976, the Board denied the request for reconsideration but construed Mr. Hyatt's amendment as electing to further prosecute claim 83 before the examiner, making Mr. Hyatt's arguments for reconsideration premature.

35. For more than a year, the PTO did not take any action on the merits. In April 1978, the PTO sent a final office action rejecting all claims.

36. In July 1978, Mr. Hyatt filed an amendment to claim 83 and requested entry of amendments to allowed claims 90 and 94.

37. In September 1978, Mr. Hyatt filed a notice of appeal.

38. In September 1978, the PTO sent an advisory action entering the July amendment, indicating that claims 90 and 94 were allowable, and refusing to enter the amendments to those claims.

39. In October 1978, Mr. Hyatt requested a suspension of prosecution based on a co-pending application, and in November 1978, Mr. Hyatt requested that PTO defer sending an examiner's answer. The PTO granted both requests.

40. From July 1979 to March 1982, Mr. Hyatt filed four more requests for six-month suspensions, which the PTO granted.

41. In October 1983, the PTO *sua sponte* suspended prosecution indefinitely.

42. For the next eleven and a half years, the PTO did not take any substantive action and ignored a 1988 status request from Mr. Hyatt. In March 1995, the PTO sent an examiner's answer stating that "this application has been inadvertently delayed" and "[a]ny inconvenience of applicant is regretted."

43. In May 1995, Mr. Hyatt filed a reply brief.

44. In August 1996, the Board held an oral argument on the appeal, and later that month, the Board issued a decision reversing the rejection of claim 83 but failing to decide the now-mature requests for reconsideration filed in 1976.

45. For more than six years, the PTO did not take any action on the merits. In December 2002, the PTO sent a non-final office action, allowing claims 90 and 94, agreeing

to enter an amendment to rewrite those claims in independent form, making another new claim of rejection of claim 83, and indicating that the examiner would cancel all claims where the Board had affirmed rejections (without deciding Mr. Hyatt's 1976 request for reconsideration).

46. In June 2003, Mr. Hyatt timely responded.

47. In July 2003, the PTO sent a final office action rejecting all claims.

48. In December 2003, Mr. Hyatt filed a notice of appeal.

49. In March 2004, the PTO sent an advisory action indicating that claim 91 was also allowable.

50. In May 2004, Mr. Hyatt made a submission under Rule 129(a) removing the finality of the office action, and in June 2004, Mr. Hyatt filed an amendment further to his Rule 129(a) submission.

51. In February 2005, the PTO sent a final office action with a restriction requirement and with a still further new ground of rejection of claim 83, and noting that claims 90, 91, 94, and 392-400 were allowed or allowable.

52. In April 2005, Mr. Hyatt filed a petition to withdraw the restriction requirement, and in August 2005, Mr. Hyatt filed a notice of appeal and had an interview with the examiner where the examiner agreed to withdraw the final office action and re-open prosecution.

53. In June 2006, the PTO sent a non-final office action with no restriction requirement, indicating that claims 90, 91, 94, and 389-400 were allowed or allowable and rejecting the remaining claims.

54. In December 2006, Mr. Hyatt timely responded.

55. In April 2007, the PTO sent a final office action again indicating that claims 90, 91, 94, and 389-400 were allowed or allowable and rejecting the remaining claims.

56. In October 2007, Mr. Hyatt filed a notice of appeal.

6

57. In March 2008, the PTO sent a non-final office action *sua sponte* withdrawing the previous rejections and making new rejections.

58. In September 2008, Mr. Hyatt filed another notice of appeal, and in December 2008, Mr. Hyatt filed an appeal brief.

59. The PTO did not take any action on the merits for nearly five and a half years. Instead, the PTO suspended examination on four different occasions and did not decide Mr. Hyatt's petition for action.

60. In April 2014, the PTO sent an examiner's answer, which yet again contained new grounds of rejection of all claims.

61. In June 2014, Mr. Hyatt responded with amendments, which reopened prosecution.

62. In February 2015, the PTO sent a final office action with further new grounds of rejection.

63. In August 2015, Mr. Hyatt filed a notice of appeal and an evidentiary submission, which the PTO entered in September 2015; and in February 2016, Mr. Hyatt made another submission under Rule 129(a) removing the finality of the rejections.

64. In September 2016, the PTO sent a final office action rejecting all claims and including further new grounds of rejection.

65. In February 2017, Mr. Hyatt filed a notice of appeal; in September 2017, Mr. Hyatt filed a supplemental amendment, which the PTO entered in September 2017, and an appeal brief; and in September 2017, Mr. Hyatt filed another supplemental amendment, which the PTO entered in October 2017.

66. For nearly two years after Mr. Hyatt's appeal brief, the PTO did not take any action on the merits and ignored a status request from Mr. Hyatt. In August 2019, the PTO sent an examiner's answer with still more new grounds of rejection.

67. In February 2020, Mr. Hyatt timely responded, again reopening prosecution in view of the new grounds of rejection.

68. In October 2020, the PTO sent a final office action rejecting all claims.

69. In April 2021, Mr. Hyatt filed a notice of appeal; in October 2021, Mr. Hyatt filed a claim-cancellation amendment, which the PTO entered in November 2021; and in November 2021, Mr. Hyatt filed an appeal brief.

70. In October 2022, the PTO filed an examiner's answer.

71. The PTO's failure to send an examiner's answer within six months violated the commitment it made to this Court in *Hyatt v. PTO*, No. 14-cv-01300-TSE-TCB, ECF 156 (E.D. Va.).

72. In March 2023, Mr. Hyatt timely filed a reply brief.

73. The PTO did not take any action on the merits for another period of nearly two years. On November 17, 2025, the Board sent its decision affirming the rejections of each of the Subject Claims on at least one ground of rejection.

74. *De novo* consideration of Mr. Hyatt's entitlement to a patent on the '771 Application is uniquely necessary due to the PTO's decades-long campaign to prevent Mr. Hyatt from obtaining further patents on his inventions. Beginning in the mid-1990s, when PTO pulled several of Hyatt's applications from issuance, PTO has engaged in concerted action to prevent any of Hyatt's applications from issuing as patents. PTO placed Hyatt's applications into the SAWS program to prevent the mailing of a notice of allowance even where an examiner wished to allow Hyatt's applications. Where Hyatt prevailed before the Patent Board, PTO "recycled" his applications by reopening prosecution after he prevailed before the Board. PTO then began to thwart Patent Board review altogether by placing Hyatt's applications in an administrative purgatory that one federal judge referred to as "never-never land." During this time, PTO misrepresented its intent to act on Mr. Hyatt's applications to at least one federal court. Aspects of that campaign have been attested to in sworn testimony by officials who personally interfered with the examination, issuance, and appeal of Hyatt's applications.

75. Ultimately, after decades of prosecution, PTO threw out all prior activity and began prosecution anew with the goal of rejecting or forcing Hyatt's applications into abandonment. During this time, the very examiners who were supposed to be impartially examining his applications were creating disrespectful "memes" about him that mirrored the language in the PTO's office actions and were sending emails disparaging his personal character. Meanwhile, PTO management instructed examiners to reject submissions Hyatt had not even made and, within three years of resuming examination, informed a federal court that PTO intended to reject all of Mr. Hyatt's applications. And PTO did, rejecting every claim in every application that the Office had not forced into abandonment, irrespective of the actual merits of the applications.

76. For these reasons, among others, PTO acted in bad faith and prejudiced the proceedings underlying the '771 Application.

## The Written Description Rejection

77. The PTO rejected Subject Claims 94, 103, 104, 106–108, 111–113, 115, 118, 120, 123, 124, 126, 134–139, 146, 147, 149, 151, 152, 154–158, 164, 176–178, 180–182, 185–187, 190–192, 195, 197, 198, 200, 202, 203, 207, 208, 210–214, 217, 218, 220, 221, 223, 242–244, 250, 254, 264, 267, 273–276, 279, 283, 286–288, 290, 292, 294, 296–302, 304, 305, 307–312, 314, 315, 317, 318, 320, 321, 323–325, 328, 331, 334–336, 340, 341, 343, 345, 347, 350, 351, 355, 357–359, 361, 365–367, 373, 375, 377, 380–382, 384, 388, 390, 392, 396, and 400 for alleged lack of written description within the meaning of pre-AIA 35 U.S.C. § 112, first paragraph.

78. The disclosure of the '771 Application describes the claimed subject matter of the Subject Claims rejected for this reason (listed above) in such manner that a person of ordinary skill in the relevant field of art would understand that Mr. Hyatt had possession of the invention claimed in that Subject Claim as of the '771 Application's effective filing date.

79. The rejection of the Subject Claims rejected for this reason (listed above) under pre-AIA 35 U.S.C. § 112, for alleged lack of written description under pre-AIA 35 U.S.C. § 112, first paragraph, is erroneous.

### The Prosecution Laches Rejection

80. The PTO rejected the Subject Claims and held the '771 Application entirely forfeited under the equitable doctrine of prosecution laches.

81. The rejection for prosecution laches is erroneous.

82. The prosecution laches rejection is erroneous because prosecution laches is not a valid ground of rejection under the Patent Act, particularly for the '771 Application, which is subject to the two-submission limit of the URAA Transitional Rules.

83. The prosecution laches rejection is erroneous because Mr. Hyatt did not delay prosecution.

84. The prosecution laches rejection is erroneous because any delay in the prosecution is attributable to the actions or inaction of the PTO.

85. The prosecution laches rejection is erroneous because any delay in prosecution fairly attributed to Mr. Hyatt is not unreasonable and not unexplained.

86. The prosecution laches rejection is erroneous because Mr. Hyatt's prosecution actions did not constitute an egregious misuse of the statutory patent system.

87. The prosecution laches rejection is erroneous because the PTO failed to warn Mr. Hyatt in advance of any specific actions or inaction of the risk of forfeiture of his rights under the Patent Act in or as to the '771 Application and failed to warn Mr. Hyatt of what specific actions he should take or not take to avoid forfeiture.

88. The prosecution laches rejection is erroneous because the PTO failed to make a sufficient showing of intervening rights.

89. The prosecution laches rejection is erroneous because the PTO unreasonably delayed in asserting prosecution laches after decades of prosecution activity by Mr. Hyatt,

prejudicing Mr. Hyatt, who has invested significant amounts of time and money in the prosecution of the '771 Application.

90. The prosecution laches rejection is erroneous because the PTO has unclean hands.

### Objections

91. In addition to rejecting the Subject Claims, the PTO has objected to the drawings.

92. All objections to the drawings, and any objections to the specification, are erroneous because the drawings and specification comply with the requirements of law.

### Count I: Issuance of a Patent

93. The above paragraphs are hereby incorporated by reference as if set forth fully herein.

94. Patent Act Section 145 provides a cause of action for a patent applicant dissatisfied with a decision of the Patent Trial and Appeal Board to obtain a judgment that the "applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board." 35 U.S.C. § 145.

95. Each of the Subject Claims of the '771 Application was involved in the November 17, 2025, decision of the Patent Trial and Appeal Board.

96. Each of the Subject Claims of the '771 Application is patentable.

97. Each of the Subject Claims of the '771 Application satisfies all applicable legal requirements for issuance of a patent.

98. Mr. Hyatt is entitled to receive a patent on the Subject Claims in the '771 Application.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully asks that this Court enter Judgment in his favor and that he be granted the following relief:

A. A decree that Mr. Hyatt is entitled to receive a patent for the '771 Application on the Subject Claims;

B. A decree that the rejections of the Subject Claims of the '771 Application are erroneous;

C. A decree authorizing the Director of the United States Patent and Trademark Office to issue a patent for the subject matter claimed in the Subject Claims of the '771 Application;

D. A decree that the specification and drawings of the '771 Application comply with the requirements of law; and

E. Such other and further relief as the Court may deem just and proper.

Dated: January 19, 2026

Respectfully submitted,

/s/ Mark W. DeLaquil
MARK W. DELAQUIL (VA Bar No. 68088)
ANDREW M. GROSSMAN*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1527
agrossman@bakerlaw.com
mdelaquil@bakerlaw.com

*Attorneys for Gilbert P. Hyatt*

* Application for admission *pro hac vice* forthcoming